UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| JOHN MASSARO ET AL., | : | |
| --- | --- | --- |
| Plaintiffs, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:05-cv-00786 (VLB) |
| TOWN OF TRUMBULL ET AL., | : | |
| Defendants. | : | December 13, 2007 |

## MEMORANDUM OF DECISION
## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. #47]

This case concerns the arrest of the named plaintiff, John Massaro, and the detention of his companion and co-plaintiff, Donna Barron. There are only ten remaining defendants. Nine of them are members of the police department of the town of Trumbull, Connecticut: Kenneth Jones, William Ruscoe, Timothy Fedor, Brian Weir, Ronald Kirby, Richard Carlson, Todd Edwards, Greg Lee, and Robert Lee.[1] The tenth defendant, Sergeant Toreso, is a member of the police department of the town of Monroe, Connecticut.

The plaintiffs filed this action pursuant to 42 U.S.C. § 1983, claiming that the defendants subjected them to excessive force when the defendants served warrants on Massaro on April 1, 2004. The defendants have filed a motion for summary judgment on the ground that they are entitled to qualified immunity. For the reasons given below, the defendants' motion for summary judgment [Doc.

---

[1] Although the caption on some of the plaintiffs' filings also includes a defendant named Sergeant Scinto, the plaintiffs did not name Scinto as a defendant in their amended complaint [Doc. #33] and that person is therefore not a party to this case.

#47] is GRANTED.

The following undisputed facts are relevant to the defendants' motion for summary judgment. At 7:30 a.m. on April 1, 2004, nine of the ten defendants were present at the plaintiffs' home in order to serve search and arrest warrants because Massaro was suspected of having committed burglary. As to the tenth defendant, Kirby was not present at the plaintiffs' home but had ordered the other defendants to serve the warrants. The defendants knew that Massaro was a convicted felon who had committed crimes involving weapons, and, therefore, they believed that serving the warrants was dangerous.

Weir was assigned to knock and announce the warrants. He first knocked on Massaro's exterior screen door and did not receive a response after approximately one minute. Weir then opened the exterior screen door and knocked on the interior door, which had a large window in it. Massaro and Barron awoke from bed and responded to the knocking. Massaro approached the door with Barron following behind him. Massaro then waited approximately thirty seconds before complying with Weir's orders to open the door. When Massaro opened the door, Weir grabbed Massaro's wrist and shoulder, pushed him to the ground, and handcuffed him. Barron complied with the defendants' orders to lie on the ground. The defendants handcuffed her while they searched the home.

According to Massaro, the defendants severely injured him by kicking him at least seven times, hitting him with a rifle, and dragging him along a concrete patio. Massaro alleges that the defendants forced him to choose between a trip

to the hospital or a change out of his bedclothes, and he chose to change his clothes. He sought treatment at a hospital emergency room the following day. The emergency room physician diagnosed Massaro with a head contusion and discharged him after 40 minutes. Although Massaro alleges that he suffered other injuries and has received treatment for them, he has not provided any documentation of the injuries and treatment.

Barron alleges that the defendants kicked her, pulled her hair, and injured her hip. However, she did not seek any medical treatment until more than seven and one-half months later. That treatment consisted of a prescription painkiller and recommended physical therapy, but Barron declined to attend the physical therapy appointments. Like Massaro, Barron alleges that she suffered significant injuries but has not provided any documentation in support.

Before considering the defendants' motion for summary judgment, the Court notes that the plaintiffs failed to make any allegations against five of the ten defendants, namely, Carlson, Edwards, G. Lee, R. Lee, and Toreso. "Where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." Dove v. Fordham Univ., 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999), aff'd, 210 F.3d 354 (2d Cir. 2000). Furthermore, Kirby ordered the other defendants to serve the warrants but was not present at the plaintiffs' home. "[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on

respondeat superior." Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003). The plaintiffs' complaint is therefore dismissed as to Carlson, Edwards, G. Lee, R. Lee, Toreso, and Kirby. The Court needs to consider the defendants' motion for summary judgment only with regard to the remaining four defendants, namely, Jones, Ruscoe, Fedor, and Weir.

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ." Fed. R. Civ. P. 56(c). The court "construe[s] the evidence in the light most favorable to the non-moving party and . . . draw[s] all reasonable inferences in its favor." Huminski v. Corsones, 396 F.3d 53, 69-70 (2d Cir. 2004). "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006). "The moving party bears the burden of showing that he or she is entitled to summary judgment." Huminski, 396 F.3d at 69. "[T]he burden on the moving party may be discharged by 'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002). "If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be

4

sufficient to support a jury verdict in its favor." Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. . . . [T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. . . . When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 127 S. Ct. 1769, 1776 (2007).

The defendants seek summary judgment on the ground of qualified immunity. "Qualified immunity shields police officers acting in their official capacity from suits for damages . . . unless their actions violate clearly-established rights of which an objectively reasonable official would have known. . . . This is a doctrine that seeks to balance the twin facts that civil actions for damages may offer the only realistic avenue for vindication of constitutional guarantees, and that such suits nevertheless can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties. . . .

5

"The Supreme Court has established a two-part inquiry to determine when a district court should hold that the doctrine of qualified immunity bars a suit against government officials: (1) the court must first consider whether the facts alleged, when taken in the light most favorable to the party asserting the injury, demonstrate a violation of a constitutional right, Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001); and (2) the court must then consider whether the officials' actions violated 'clearly established statutory or constitutional rights of which a reasonable person would have known,' Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)." Jones v. Parmley, 465 F.3d 46, 55 (2d Cir. 2006).

In examining the constitutional right that the plaintiffs claim the defendants violated, the Court observes that "[t]he Fourth Amendment protects individuals from the government's use of excessive force when detaining or arresting individuals. . . . When determining whether police officers have employed excessive force in the arrest context, the Supreme Court has instructed that courts should examine whether the use of force is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to [the officers'] underlying intent or motivation.' Graham v. Connor, 490 U.S. 386, 397, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). The touchstone of the inquiry, then, is reasonableness, and in measuring it, [the court] consider[s] the facts and circumstances of each particular case, including the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect

is resisting or attempting to evade arrest. . . . [The court is], of course, mindful that the reasonableness inquiry does not allow [it] to substitute [its] own viewpoint; [the court] must judge the officer's actions 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.' Graham, 490 U.S. at 396 . . . . Indeed, the Supreme Court has cautioned that in analyzing excessive force claims, courts must make 'allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.' Id. at 397 . . . ." Jones, 465 F.3d at 61. "[T]o deny summary judgment any time a material issue of fact remains on the excessive force claim . . . could undermine the goal of qualified immunity to avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment. . . . If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Saucier, 533 U.S. at 202.

With those principles in mind, the Court begins by applying the first part of the qualified immunity inquiry, namely, whether the facts alleged demonstrate a violation of the plaintiffs' Fourth Amendment rights. Viewing those facts in the light most favorable to the plaintiffs, it is doubtful that the plaintiffs have shown that the defendants used excessive force in executing the search and arrest warrants. Besides the plaintiffs' own deposition testimony, the only evidence that raises the possible inference of excessive force is Massaro's emergency

7

room report, which indicates that he suffered a head contusion but was nevertheless discharged from the hospital after only 40 minutes. Massaro does not allege that the emergency room physician recommended any further treatment for the contusion. That contusion apparently occurred when Weir pushed him to the ground, but that push does not necessarily qualify as excessive force. The United States Supreme Court's "Fourth Amendment jurisprudence has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. . . . Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham, 490 U.S. at 396. Although Weir may not have needed to push Massaro to the ground in order to arrest him, Weir was faced with a tense and uncertain situation involving a convicted felon and had to make a split-second decision.

If this Court concluded that pushing Massaro to the ground did not constitute excessive force, the qualified immunity inquiry would be at its end. However, even if the Court assumes that the push was excessive, the push did not violate a clearly established right of which a reasonable person would have known. The plaintiffs have not identified, and the Court is not aware of, any authority suggesting the existence of a clearly established rule prohibiting police officers from acting in the manner they did in this case. Specifically, Massaro approached the defendants with Barron behind him, and Massaro delayed in complying with the defendants' orders to surrender. The defendants knew that

**Massaro was a convicted felon who had committed crimes involving weapons. When Massaro opened the door, Weir pushed him to the ground and handcuffed him. Although that push may have resulted in Massaro's head contusion, there is no clearly established rule prohibiting police officers from pushing a person to the ground when that person has failed to comply with orders to surrender and the officers have the objective of taking that person into custody as safely as possible. The defendants are therefore entitled to qualified immunity.**

**The Court's analysis of this case is similar to the analysis performed by the United States Supreme Court in <u>Saucier</u>, 533 U.S. 194. In <u>Saucier</u>, two police officers grabbed a protestor who began walking toward Vice President Al Gore, who was delivering a speech. The officers shoved or threw the protestor into a van and transported him to a police station. The protestor later sued the officers, claiming that he had been subjected to excessive force. Although the District Court and the Court of Appeals decided that the officers were not entitled to qualified immunity on the excessive force claim, the Supreme Court reversed. The Court found it necessary to assume that the grabbing of the protestor and the shoving of him into the van could have constituted excessive force and therefore proceeded to the second part of the qualified immunity inquiry. Examining the circumstances facing the officers, the Court concluded that their actions were "within the bounds of appropriate police responses" and that there was no "clearly established rule that would prohibit using the force [the officers] did to place [the protestor] into the van" in order to protect the Vice President and**

maintain order. The Court found further support for its conclusion in the absence of pain or injury to the protestor. <u>Saucier</u>, 533 U.S. at 208-09. In the present case, although Massaro apparently suffered an injury, the evidence indicates that it was minor. The plaintiffs have not offered any evidence in support of their claims of more extensive injuries besides their own deposition testimony, and, therefore, that testimony does not create a genuine issue for trial. See <u>Scott</u>, 127 S. Ct. at 1776.

The defendants' motion for summary judgment [Doc. #47] is GRANTED. The Clerk is directed to CLOSE this case.

                               IT IS SO ORDERED.

                               /s/
                               Vanessa L. Bryant
                               United States District Judge

Dated at Hartford, Connecticut: December 13, 2007.